60 F.3d 823
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 MULTI-CHANNEL TV CABLE COMPANY, d/b/a Adelphia Cable
Communications, Plaintiff-Appellant,
v.
CHARLOTTESVILLE QUALITY CABLE OPERATING COMPANY, a Virginia
corporation; Rivanna Partnership, a Virginia general
partnership; Alcova Realty & Management Company; Fountain
Court Limited Partnership, a Virginia limited partnership;
John A. Schwab, Jr.; Bernard A. Schwab; C. Stuart Raynor,
Jr., Defendants-Appellees.
 No. 94-2569.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1995.
Decided July 11, 1995.
 
 ARGUED: John Douglas McKay, BARRICK & MCKAY, Charlottesville, VA, for Appellant. Deborah Colleen Costlow, WINSTON & STRAWN, Washington, DC, for Appellees. ON BRIEF: David C. Wagoner, BARRICK & MCKAY, Charlottesville, VA; Randall D. Fisher, John B. Glicksman, ADELPHIA CABLE COMMUNICATIONS, Coudersport, PA, for Appellant. Alan G. Fishel, WINSTON & STRAWN, Washington, DC, for Appellees.
 W.D.Va.
 AFFIRMED.
 Before WILKINSON, HAMILTON, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Multi-Channel TV Cable Company d/b/a Adelphia Cable Communications (Adelphia) moved the magistrate judge* to modify a preliminary injunction respecting Adelphia's rights to provide cable television services to owners of multi-dwelling apartment complexes (MDU owners). Charlottesville Quality Cable Company (CQC) opposed modification of the preliminary injunction, contending that the circumstances surrounding this litigation had not sufficiently changed to warrant modification. The magistrate judge declined to modify the preliminary injunction, and Adelphia appealed. We affirm.
 
 I.
 
 2
 The material facts are recited in Multi-Channel TV Cable v. Charlottesville Quality Cable Co., 22 F.3d 546 (4th Cir.1994), and will not be repeated in detail here. Adelphia instituted suit against CQC, contending that CQC was interfering with Adelphia's rights concern ing installation and servicing of cable television at various multidwelling units (MDUs) in Charlottesville, Virginia. In order to preserve the status quo pending resolution of the merits, on December 3, 1993, Adelphia moved the magistrate judge to issue a preliminary injunction (PI) to prohibit CQC from providing cable service to the MDUs. On December 15, 1993, the magistrate judge issued the PI, which prohibited CQC from:
 
 
 3
 operating under the exclusive provider agreements and prohibited the MDU owners ... from expressing any preference for cable providers to the MDU tenants. The[PI] also allowed Adelphia to reconnect its cable service to those tenants whose leases had not expired by December 13, 1993 and who desired reconnection. Finally, the [PI] provided that, if some tenants wished to receive cable services from CQC, CQC could not utilize any equipment, wiring or hardware belonging to or claimed to be the property of Adelphia.
 
 
 4
 Id. at 550.
 
 
 5
 We affirmed the issuance of the PI, but modified it to the extent that it prohibited the MDU owners "from communicating to its tenants any preferences of cable providers," concluding that such a prohibition violated the First Amendment. Id. at 552 (internal quotations marks omitted). Thus, to the extent the PI infringed impermissibly on the First Amendment, we vacated that portion of it. See id. The PI as modified by this court permitted the MDU owners to discuss with their tenants amendments that may occur in future renewal or new leases as those amendments may relate to the choice of cable providers.
 
 
 6
 On November 8, 1994, Adelphia moved the magistrate judge to modify further the PI to permit it to occupy the MDU owners' premises despite lease expirations and the establishment of new and renewal leases that preserved the MDU owners' right to select the cable providers. According to Adelphia, CQC obtained lease addenda that prohibit the MDU tenants from choosing any cable provider other than CQC for what are apparently hold-over, new, and unexpired leases, thereby violating the PI. Adelphia maintains that this modification is necessary to restore the status quo until resolution on the merits. The magistrate judge declined to modify the PI, holding that the grounds offered in support of modification failed to establish that the circumstances had changed to such a degree as to warrant modification.
 
 
 7
 Adelphia appeals, positing that the PI should be modified. Adelphia asserts that the circumstances have changed so that modification is necessary in order to preserve the status quo that the PI was designed to maintain. Adelphia posits that CQC's conduct under the PI is defeating the PI's purpose. This argument is premised essentially on the assertion that newly discovered evidence has revealed changed circumstances, thereby warranting modification. Conversely, CQC maintains that modification was properly denied, positing that the purportedly new evidence on which Adelphia relies is not new.
 
 II.
 
 8
 In Favia v. Indiana University of Pennsylvania, 7 F.3d 332 (3d Cir.1993), the Third Circuit opined with respect to modification of a preliminary injunction:
 
 
 9
 In order to prevail on a motion to modify, the movant must establish a change in circumstances that would make the original preliminary injunction inequitable. The motion does not force the trial judge to permit relitigation of his original determination of the injunction and should not serve as an avenue of untimely review of that determination.
 
 
 10
 Id. at 340 (internal quotation marks omitted). After explaining that Supreme Court precedent was equivocal with respect to the "nature and extent of the burden borne by the party seeking modification," id., the court concluded that, based on most recent Supreme Court precedent, the proper test to apply is whether there was a " 'significant change in facts or law' and that the proposed modification is 'suitably tailored' to the changed circumstances," id. at 341 (quoting Rufo v. Inmates of Suffolk County Jail, 112 S.Ct. 748, 765 (1992)). The Favia court was compelled to use this standard because the nature of the reform in Favia was institutional, a university athletic program, as in Rufo, which addressed prison inmate reform. The Favia court observed, however, that a stricter standard had previously prevailed prior to Rufo: a party seeking modification had to make " 'a clear showing of grievous wrong evoked by new and unforeseen conditions,' " id. (quoting United States v. Swift & Co., 286 U.S. 106, 119 (1932), and also citing United States v. United Shoe Machine Corp., 391 U.S. 244 (1968)). Given that modification of a preliminary injunction requires changed circumstances, generally we do not review "any aspects of the present case other than those which developed subsequent to the granting of the preliminary injunction," Fern v. Thorp Pub. Sch., 532 F.2d 1120, 1128 (7th Cir.1976). This precept makes sense because "[a] motion to modify a preliminary injunction is meant only to relieve inequities that arise after the original order," Favia, 7 F.3d at 338. Concerning our standard of review, the Favia court opined:
 
 
 11
 Our scope of review over [denial of a motion for modification of a preliminary injunction] is quite ... limited. We review orders denying motions for modification of an injunction only for abuse of discretion. We have described an abuse of discretion as a decision that is arbitrary, capricious or irrational or employs improper standards, criteria or procedures. Factual determinations subsidiary to the district court's conclusion are of course reviewed for clear error.
 
 
 12
 Id. at 240. Governed by these principles, we turn to Adelphia's argument that the PI should be modified.
 
 
 13
 Adelphia asserts that the status quo is not being preserved based on the discovery of new evidence that could not have been discovered previously. Adelphia's purportedly "new" evidence consists of the following: (1) when the cable systems were installed, Adelphia did not discuss the duration of its access to the MDUs, stating that Stuart Raynor, Joe Price, and Gary Bennett, the parties who bargained for Adelphia's services at the MDU, never discussed this contingency; (2) tenants have come and gone in the twelve years that Adelphia has served the MDUs, yet Adelphia's access was not terminated as a result of any lease expiration; (3) there was no provision for the phasing out of any bulk service provisions based on the then-existing leases; and (4) the MDU owners had not previously inserted language in the leases limiting the MDU tenants' choice of cable providers.
 
 
 14
 According to Adelphia, this new evidence warrants modification pursuant to Fed.R.Civ.P. 60(b)(1), (2).
 
 A.
 
 15
 Rule 60(b)(2) provides that the court may grant relief from a preliminary injunction on the basis of newly discovered evidence, but this new evidence must not have been available initially through the exercise of due diligence. See Boryan v. United States, 884 F.2d 767, 771 (4th Cir.1989). With respect to modifications of a preliminary injunction, "[m]inor changes in the facts or law usually are insufficient for modification .... [n]ewly discovered evidence can be the basis of a motion to modify only if the new matter was not reasonably discoverable by due diligence during the original proceeding," 11 Charles Wright & Arthur Miller, Federal Practice and Procedure Sec. 2961, at 608 (West 1973).
 
 
 16
 Adelphia's argument fails because this purportedly "new" evidence was known, or should have been known, at the time the PI issued. In a nutshell, this evidence is simply not "new evidence" as contemplated by Rule 60(b)(2). First, any arrangements or understandings that existed between Raynor and Price with respect to Adelphia's interests at the MDUs existed at the time of the original PI hearing. Second, the fact that tenants have come and gone over the years is hardly "new." Apartments are constantly vacated by old tenants and occupied by new ones. Adelphia had information about the tenants it was servicing at the MDUs and could have easily known when the tenant leases were expiring and when tenants were thus discontinuing cable services. Third, regarding the bulk services, Adelphia cannot contend this is new evidence because the impetus of this litigation was the discontinuance of bulk services by Adelphia in the MDUs to go on a tenant-by-tenant basis. Fourth, with respect to the absence of language in earlier leases that limited the tenants' choice of cable providers, this fact certainly did not occur after the PI was issued. Additionally, as stated, it can hardly come as a surprise to Adelphia that, during the time it was the exclusive provider of cable services to the MDUs' tenants, the leases would not have granted the tenants the option to choose an alternative cable provider. None of this purportedly new evidence is "new." All of this information was known or should have been known to Adelphia at the time of the hearing on the PI. See generally id. Sec. 2859, at 181-86.
 
 B.
 
 17
 Rule 60(b)(1) authorizes the court to grant relief for "mistake, inadvertence, surprise, or excusable neglect." Relief, however, is inappropriate simply because a litigant is unhappy with the judgment; there must be some showing of why the litigant failed to avoid mistake, inadvertence, surprise, or excusable neglect. See id. Sec. 2858, at 170. Adelphia has failed to demonstrate why it failed to avoid mistake, inadvertence, surprise, or excusable neglect.
 
 III.
 
 18
 The purportedly new evidence is not new; there are no changed circumstances in this case; thus, there is no basis for modifying the PI. Certainly, we cannot conclude that the magistrate judge abused his discretion in declining to modify the PI. The judgment of the magistrate judge is affirmed.
 
 AFFIRMED
 
 
 *
 The parties elected to proceed before the magistrate judge. See 28 U.S.C.A. Sec. 636 (West 1993)